IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

JOSEPH A. SUNDERMEYER,

                                                    OPINION AND ORDER

                Plaintiff,

                                                    19-cv-502-bbc

    v.

KELLY KUTINA, KIEL K. BURNSTAD, CUNNINGHAM,
ALLEN E. REYNOLDS, J. BILLS, R. SHALLOCK,
LINDA FAIT, CHRISTOPHER BAKER, KARL I. HENRICHSEN,
LARRY W. FUCHS, TIMOTHY J. THOMAS, SHANNON WILSON,
EMILIE WENTWORTH-KASTEN, MICHAEL J. KASTEN,
KYLE E. ESLINGER, JASON ACHTERBERG, HEIDI
MELLENBERGER, KIMBERLY BETZHOLD and
KEVIN WEINSHORTT,

                              Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Pro se plaintiff and prisoner Joseph Sundermeyer has filed a civil action under 42 U.S.C. § 1983, contending that various correctional officials and prison staff at the New Lisbon and Stanley Correctional Institutions violated his rights under the First and Eighth Amendments and due process clause by sexually harassing him and then by retaliating against him when he tried to report the harassment. His complaint is before the court for screening under 28 U.S.C. § 1915A, to determine whether it is frivolous, malicious, fails to state a claim upon which relief may be granted or seeks monetary relief from a defendant who is immune from such relief. Plaintiff also has filed a motion for court assistance in recruiting counsel. Dkt. #3.

For the reasons below, I am dismissing plaintiff's complaint because I conclude that

1

plaintiff's allegations are insufficient to state a constitutional claim upon which relief may be granted against any of the defendants.  Plaintiff's motion for court assistance in recruiting counsel will be denied as moot.

Plaintiff alleges the following facts in his complaint.

ALLEGATIONS OF FACT

A.  The Parties

Plaintiff Joseph Sundermeyer is currently incarcerated at the Stanley Correctional Institution, and from August 2014 to April 25, 2017, he was incarcerated at the New Lisbon Correctional Institution.  Defendant Jason Achterberg is the security director at the Stanley Correctional Institution, and defendants Shannon Wilson, Emilie Wentworth, Michael Kasten and Kyle Eslinger are correctional officers there.  Defendants Heidi Mellenberger and Kimberly Betzhold are employed in the Office of Special Operations at the central office for the Department of Corrections in Madison, Wisconsin.  Defendant Kevin Weinshortt is a City of New Lisbon police officer.  The remaining defendants are employed at the New Lisbon Correctional Institution: Timothy Thomas is the deputy warden; Larry Fuchs is the security director; Linda Fait is an offender classification specialist; R. Shallock is an educational guidance counselor; J. Bills is a social worker; and Kelly Kutina (sergeant), Kiel Burnstad, Cunningham, Allen Reynolds, Christopher Baker (captain), Karl Henrichsen (administrator captain) are correctional officers.

B. Events at New Lisbon Correctional Institution

At around 9:45 a.m. on March 25, 2017 at the New Lisbon Correctional Institution, plaintiff observed defendants Burnstad and Cunningham laugh as defendant Kutina removed a spoon from an ice cream cup and placed it "in a sexual manner" in his mouth" while Kutina brought the ice cream cup to his genital area and moved it back and forth. Kutina was looking at plaintiff while he made these motions. Plaintiff understood the gestures to mean that Kutina was suggesting that plaintiff "perform fellatio." On March 29, 2017, defendant Reynolds refused to take plaintiff's statement reporting sexual harassment and retaliation under the Prison Rape Elimination Act (PREA). According to plaintiff, the above acts were taken in retaliation for his previous complaints of sexual harassment against prison staff. Unidentified staff members at the prison had opened and read a March 8, 2017 letter addressed to plaintiff from the Wisconsin Coalition Against Sexual Assault.

On April 2, 2017, plaintiff filed a PREA complaint against Kutina, Cunningham, Burnstad and Reynolds, alleging sexual harassment and retaliation and asking defendants Mellenberger and Betzhold and local law enforcement to investigate. On April 6, 2017, defendants Fuchs, Bills and Thomas refused to allow plaintiff to call local law enforcement to report the March 25 incident, and Fuchs and Thomas told plaintiff that only Mellenberger and Betzhold would be investigating the allegations. On the same day, Mellenberger and Betzhold interviewed plaintiff, who repeatedly asked for the footage from the security cameras in the area of the March 25 incident. Mellenberger and Betzhold refused to obtain the footage and did not allow plaintiff to call the United States Attorney's

3

Office or the Federal Bureau of Investigation. Plaintiff filed a PREA complaint against Thomas on April 7, 2017 regarding his refusal to allow a police investigation.

On April 18, 2017, defendant Bills told plaintiff that defendants Fuchs and Achterberg agreed to transfer plaintiff to the Stanley Correctional Institution because he had filed PREA complaints on March 25 and April 7, 2017. Plaintiff told Bills that he feared that Achterberg would retaliate against him at Stanley because Achterberg used to be a captain at New Lisbon in 2014 and was friends with the staff against whom plaintiff had filed PREA complaints. On April 19, 2017, plaintiff repeated his concerns to the program review committee—which included defendants Fait, Shallock and Baker—and told them that he was being transferred in retaliation for filing PREA complaints. The committee approved the transfer, told plaintiff that he could file a form requesting that he remain separate from Achterberg and refused plaintiff's request to call local law enforcement agencies, informing him that they had no authority over "PREA matters."

On April 21, 2017, Fuchs (who is Achterberg's supervisor) denied plaintiff's request to remain separate from Achterberg. Also on April 21, defendant Weinshortt (a City of New Lisbon police officer) interviewed plaintiff about the March 25, 2017 incident. Defendant Henrichsen was present during the interview and made plaintiff feel intimidated. Weinshortt refused to obtain the video footage of the alleged incident and did not take plaintiff's statement or file a police report, explaining that it was a civil and not criminal matter.

## C. Events at Stanley Correctional Institution

Plaintiff was transferred to the Stanley Correctional Institution sometime between April 25 and 27, 2017 and placed in general population. Plaintiff contacted the PREA hotline on April 28, reporting his retaliatory transfer and Weinshortt's refusal to investigate the alleged March 25, 2017 sexual harassment. On April 30, he filed a PREA complaint against Henrichsen and Weinshortt regarding their unwillingness to pursue an investigation.

On May 1, 2017, Henrichsen issued plaintiff conduct report no. 2987401 for lying about staff regarding the alleged incident on March 25. He wrote that the video footage did not show an ice cream cup or him placing anything near his genitals. On May 2, 2017, defendant Eslinger, the PREA compliance manager at Stanley, told plaintiff that the PREA hotline is to be used for reports of sexual abuse and harassment and not for the types of complaints that plaintiff was making. Eslinger informed plaintiff that if he continued to make similar complaints, he would be issued a conduct report for the misuse of state or federal property.

Plaintiff pleaded not guilty to conduct report no. 2987401 and filed another PREA complaint on May 7, 2017, alleging that the conduct report was issued in retaliation because he had filed PREA complaints. He requested the video footage of the March 25 incident and submitted 27 questions for Henrichsen to answer. Henrichsen responded that he had no personal knowledge of the facts on which the conduct report was based because he had relied on the investigation report provided to him by the office of special operations (which

5

presumably meant Mellenberger and Betzhold).

Following a disciplinary hearing on June 6, 2017, defendants Kasten, Wentworth and Wilson found plaintiff guilty and imposed a 120-day disciplinary separation on plaintiff. The hearing committee stated that they found Henrichsen credible and that investigators with the office of special operations had reviewed the video footage. On appeal, the deputy warden at Stanley overturned the hearing committee's decision and ordered a rehearing at which (1) plaintiff should be provided with the names of the PREA investigators so that he could ask them questions; and (2) the hearing officer should personally review the video footage. Plaintiff was released from temporary lock-up after spending 52 days on the restrictive housing unit at Stanley.

On July 30, 2017, plaintiff submitted 85 questions to Mellenberger and Betzhold, but they refused to answer them. Plaintiff also submitted 43 questions to Henrichsen, who "cherry picked his testimony." On August 28, 2017, plaintiff appeared before defendant Kasten and another correctional officer for the rehearing. The conduct report was dismissed because of the poor quality of the video footage, Mellenberger's and Betzhold's refusal to answer plaintiff's questions and Henrichsen's failure to review the video before issuing the conduct report.

OPINION

Plaintiff states that he wishes to bring claims under the First and Eighth Amendments and the due process clause of the Fourteenth Amendment. I address each of these theories

6

below.

## A. Eighth Amendment

Plaintiff alleges that defendant Kutina sexually harassed him by making sexual gestures with a spoon and ice cream cup and that defendants Burnstad and Cunningham failed to intervene to stop the harassment. However, one-time gestures or verbal harassment by a prison official are rarely enough by themselves to implicate a constitutional right. DeWalt v. Carter, 224 F.3d 607, 612 (7th Cir. 2000) ("[S]imple verbal harassment does not constitute cruel and unusual punishment, deprive a prisoner of a protected liberty interest or deny a prisoner equal protection of the laws."). See also Dobbey v. Illinois Dept. of Corrections, 574 F.3d 443, 446 (7th Cir. 2009) (holding that guard's act of hanging noose in view of black inmates did not rise to level of constitution violation because, "harassment, while regrettable, is not what comes to mind when one thinks of 'cruel and unusual' punishment. Nor does it inflict injury comparable in gravity to failing to provide a prisoner with adequate medical care or with reasonable protection against the violence of other prisoners.").

Depending on the circumstances, a prison official may violate the Eighth Amendment by engaging in conduct intended to inflict psychological pain on a prisoner. E.g., Whitman v. Nesic, 368 F.3d 931, 934 (7th Cir. 2004) (strip search of inmate violates Eighth Amendment if it is "maliciously motivated, unrelated to institutional security, and hence totally without penological justification," and is "conducted in a harassing manner intended

7

to humiliate and inflict psychological pain"). For example, in Beal v. Foster, 803 F.3d 356, 358 (7th Cir. 2015), a guard allegedly displayed his own penis to the plaintiff on multiple occasions and made repeated sexual comments to the plaintiff that implied the plaintiff was homosexual. The court of appeals found that when this behavior by the guard was considered along with plaintiff's allegations that other inmates harassed him by calling him names such as "punk, fag, sissy, and queer," it was sufficient to state an Eighth Amendment claim at the pleading stage. Id. Specifically, the court reasoned that the guard's behavior may have caused the plaintiff severe psychological harm and increased the likelihood of sexual assaults on the plaintiff by other inmates. Id. In this instance, Kutina's alleged gestures toward plaintiff and the lack of response by Burnstad and Cunningham are clearly distinguishable from the conduct in Beal and do not rise to the level of cruel and unusual punishment. Therefore, plaintiff may not proceed on Eighth Amendment claims against defendants Kutina, Burnstad and Cunningham.

B. First Amendment

Plaintiff alleges that defendants retaliated against him in several different ways because he had filed PREA complaints against other prison staff members at some point in the past:

1. Kutina sexually harassed plaintiff on March 25, 2017, and Burnstad and Cunningham failed to intervene to stop it.

2. Defendant Reynolds refused to take plaintiff's statement in support of a PREA

complaint regarding the alleged harassment on March 25.

3. Defendants Bills, Fuchs, Achterberg, Bills, Fait, Shallock and Baker transferred plaintiff to the Stanley Correctional Institution.

4. Defendants Fuchs, Bills and Thomas refused to allow plaintiff to call local law enforcement to report the March 25 incident.

5. Defendant Eslinger told plaintiff not to call the PREA hotline about staff's refusal to let him talk with law enforcement or he would be issued a conduct report for the misuse of state or federal property.

6. Defendant Henrichsen issued plaintiff a false conduct report for lying about the March 25 incident, for which defendants Kasten, Wentworth and Wilson found plaintiff guilty and imposed punishment of 120 days disciplinary segregation.

7. Defendants Mellenberger and Betzhold made inaccurate findings during their investigation of plaintiff's PREA complaint, which led to a false conduct report and disciplinary proceedings.

Plaintiff's retaliation claims arise under the First Amendment. To state a First Amendment retaliation claim, a plaintiff must allege: (1) he was engaged in a constitutionally protected activity; (2) defendants took one or more retaliatory actions that would deter a person of "ordinary firmness" from engaging in the protected activity; and (3) sufficient facts to suggest that plaintiff's protected activity was one of the reasons defendants took action against plaintiff. Gomez v. Randle, 680 F.3d 859, 866 (7th Cir. 2012); Bridges v. Gilbert, 557 F.3d 541, 556 (7th Cir. 2009). Plaintiff's allegations are sufficient to satisfy

the first requirement of a retaliation claim because "[a] prisoner has a First Amendment right to make grievances about conditions of confinement," which would include complaints filed under the Prison rape Elimination Act. Watkins v. Kasper, 599 F.3d 791, 798 (7th Cir. 2010). However, defendants' alleged actions were either not sufficiently adverse to deter a person of "ordinary firmness" from engaging in future First Amendment activity or had no discernible relationship to plaintiff's past PREA complaints.

The one-time, sexual gesture that defendant Kutina allegedly made toward plaintiff, and that defendants Burnstad and Cunningham allegedly laughed at, was not severe for the reasons discussed above and did not discourage plaintiff from reporting it or filing a PREA complaint. Without more, the refusal to take plaintiff's statement and to allow him call local law enforcement also would not deter a person of ordinary firmness—and did not deter plaintiff—from reporting the incident, contacting the PREA hotline or filing a PREA complaint. Bridges, 557 F.3d at 555 ("Because [plaintiff] is currently exercising his right to petition the government for redress of grievances through this lawsuit, he has not been harmed.").

Plaintiff's allegation that defendant Eslinger allegedly threatened to issue plaintiff a conduct report if he did not use the PREA hotline appropriately to file a report of sexual abuse or harassment is not sufficient to state a retaliation claim because Eslinger was merely informing plaintiff of a prison rule or policy that applied to all inmates. "[A] single warning does not result in a negative consequence for an inmate and only serves to inform an inmate of behavior that should be corrected." Long v. Harring, 2018 WL 2464551, at *8 (W.D.

Wis. June 1, 2018). Eslinger's alleged instruction would not deter a person of ordinary firmness from filing a future complaint and, in fact, did not interfere with plaintiff's exercise of his First Amendment rights in this instance.

The transfer of an inmate to another institution may deter an inmate from filing future complaints or grievances under certain circumstances, such as cases in which the inmate is subject to harsher conditions of confinement in the new institution. However, in this instance, plaintiff does not allege that he was subjected to more restrictive or harsh conditions at the Stanley Correctional Institution. Although plaintiff alleges that Achterberg, who worked at Stanley, was friends with the staff against whom plaintiff had filed PREA complaints, plaintiff's allegations show that he faced the same or an even greater risk of retaliation at New Lisbon because plaintiff alleges that several staff and administrators at New Lisbon already were retaliating against him.

Finally, plaintiff alleges that defendant Henrichsen issued him a false conduct report for lying about sexual harassment based on an inaccurate investigation by defendants Mellenberger and Betzhold, and that defendants Kasten, Wentworth and Wilson imposed a punishment of 120 days disciplinary segregation without viewing the video footage in question and relying solely on the report of investigators who were not present at the hearing. Courts have found that placement in administrative detention for a sufficient period qualifies as an adverse action likely to deter future First Amendment activity. McKinley v. Schoenbeck, 731 Fed. Appx. 511, 514 (7th Cir. 2018); Holleman v. Zatecky, 2019 WL 285333, at *4 (S.D. Ind. Jan. 18, 2019); Petties v. Dybas, 2018 WL 3970148,

11

at *5 (N.D. Ill. Aug. 20, 2018) ("[U]njustifiably being forced to spend approximately nine months in segregation would deter a person of ordinary firmness from filing future grievances or lawsuits."). However, plaintiff's allegations in this case do not suggest that defendants had any discernible reason to retaliate against him.

Plaintiff provides very few details about his past PREA complaints, but I can infer that they involved staff at the New Lisbon Correctional Institution. Therefore, there is no reason to suspect that Mellenberger and Betzhold, who work in the central office in Madison, and Kasten, Wentworth and Wilson, who work at the Stanley Correctional Institution, had any reason to protect correctional officers at New Lisbon. Although Henrichsen works at New Lisbon, plaintiff alleges that he based the conduct report solely on the findings of Mellenberger and Betzhold. I understand that plaintiff believes that the investigators and the hearing committee reached the wrong conclusion, but that does not mean that their decisions were retaliatory.

Accordingly, plaintiff has failed to state a First Amendment retaliation claim against defendants Kutina, Burnstad, Cunningham, Reynolds, Thomas, Eslinger, Fuchs, Achterberg, Bills, Fait, Shallock, Baker, Henrichsen, Mellenberger, Betzhold, Kasten, Wentworth and Wilson.

### C. Due Process

Plaintiff alleges that defendant Weinshortt (a city police officer) violated his due process rights by refusing to investigate the alleged harassment of plaintiff and to charge any

12

of the other defendants with a crime. Although the Fourteenth Amendment guarantees plaintiff "meaningful access to [the] courts," Guajardo-Palma v. Martinson, 622 F.3d 801, 802 (7th Cir. 2010), he "does not have a constitutional right to have the police investigate his case at all, still less to do so to his level of satisfaction." Rossi v. City of Chicago, 790 F.3d 729, 735 (7th Cir. 2015) (mere inactivity by police does not give rise to a constitutional claim). See also DeShaney v. Winnebago County Department of Social Services, 489 U.S. 189, 196 (1989) (Constitution "generally confer[s] no affirmative right to governmental aid, even where such aid may be necessary secure life, liberty, or property interests of which the government itself may not deprive the individual.").

The Court of Appeals for the Seventh Circuit has explained that "the operative question is not whether [plaintiff's] case would have been better had the police conducted a worthy investigation, but whether their failure to do so limited his ability to obtain legal redress to such degree that it constituted a denial of judicial access." Rossi, 790 F.3d at 735 (discussing examples of police cover ups). In this case, plaintiff's allegations do not suggest that Weinshortt limited plaintiff's ability to obtain legal redress. He interviewed plaintiff and reasonably determined that plaintiff's allegations involved a civil matter and not a crime. Moreover, plaintiff was able to file several civil complaints under the Prison Rape Elimination Act. Accordingly, plaintiff has failed to state a constitutional claim against defendant Weinshortt.

ORDER

IT IS ORDERED that

1. This case is DISMISSED for plaintiff Joseph Sundermeyer's failure to state a federal claim upon which relief may be granted. A strike shall be recorded in accordance with 28 U.S.C. § 1915(g).

2. Plaintiff's motion for court assistance in recruiting counsel, dkt. #3, is DENIED as moot.

3. The clerk of court is directed to enter judgment accordingly and close this case.

Entered this 30th day of August, 2019.

BY THE COURT:
/s/

_____
BARBARA B. CRABB
District Judge